# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | |
| ABRAM PAUL WALTER, | Case No. 4:96-cr-00026-SLG |
| Defendant. | |

## ORDER ON ALL PENDING MOTIONS

Before the Court are three pending motions: (1) at Docket 98 is Defendant Abram Paul Walter's pro se Motion for Compassionate Release; (2) at Docket 109 appointed counsel filed a Supplemental Motion for Compassionate Release; and (3) at Docket 115 appointed counsel filed a Motion to Strike the Probation Report. The Government responded in opposition to the motions at Docket 120. The U.S. Probation Office for the District of Alaska filed a sealed Compassionate Release Investigation Report at Docket 114.

On July 27, 1997, this Court sentenced Mr. Walter to life imprisonment after he pled guilty to first degree murder, in violation of 18 U.S.C. § 1114, burglary of a post office, and robbery.[1] Mr. Walter pled guilty pursuant to a plea agreement in

---

[1] Docket 88 at 1-2.

which the parties stipulated to a sentence of life imprisonment, and the Government withdrew its notice of intent to seek the death penalty.[2]

Mr. Walter is currently in Bureau of Prisons custody at Fairton FCI.[3] Mr. Walter seeks a sentence reduction to 360 months' imprisonment.[4] For the reasons below, the Court denies Mr. Walter's motions.

## I. Applicable Law

The First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow federal inmates to move the district court for a sentence reduction.[5] Before seeking compassionate release in district court, a defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[6]

If an inmate has exhausted his administrative rights, a district court must consider the motion on the merits. To reduce a sentence on the merits, a court must find that "extraordinary and compelling reasons"—as set forth in the

---

[2] Docket 120 at 1; Docket 120-2; Docket 120-3.

[3] Fed. Bureau of Prisons, Inmate Locator (available at www.bop.gov/inmateloc/) (last accessed April 4, 2025). When Mr. Walter filed his pro se Motion for Compassionate Release, he was housed at USP Tucson. *See* Docket 98-5; Docket 98-8.

[4] Docket 109 at 1.

[5] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Prior to this amendment, only the Director of the Bureau of Prisons could bring a motion to reduce an inmate's sentence.

[6] 18 U.S.C. § 3582(c)(1)(A).

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 2 of 16
Case 4:96-cr-00026-SLG   Document 121   Filed 04/08/25   Page 2 of 16

applicable policy statements issued by the Sentencing Commission—and the applicable 18 U.S.C. § 3553(a) factors warrant a sentence reduction.[7] Although a district court must make both findings "before it *grants* compassionate release, a district court that properly *denies* compassionate release need not evaluate each step."[8]

"Congress has only placed two limitations directly on extraordinary and compelling reasons: the requirement that district courts are bound by the Sentencing Commission's policy statement and the requirement that 'rehabilitation alone' is not extraordinary and compelling."[9] The policy statement at U.S.S.G. § 1B1.13, "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)," applies to both BOP-filed and defendant-filed compassionate release motions.[10] Pursuant to § 1B1.13, extraordinary and compelling reasons include a defendant's serious physical or medical condition that substantially diminishes his ability to

---

[7] 18 U.S.C. § 3582(c). *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021) ("Congress provided no statutory definition of 'extraordinary and compelling reasons.' Instead, Congress stated that the Sentencing Commission, 'in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" (quoting 28 U.S.C. § 994(t))).

[8] *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (emphasis in original) (disagreeing with the defendant that a district court must make an explicit "extraordinary and compelling" finding before denying a motion based on the § 3553(a) factors).

[9] *United States v. Roper*, 72 F.4th 1097, 1100 (9th Cir. 2023) (alteration omitted) (quoting *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022)).

[10] *See* U.S. Sent'g Guidelines Manual § 1B1.13(a) (U.S. Sent'g Comm'n 2024) ("Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . .").

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 3 of 16
Case 4:96-cr-00026-SLG     Document 121     Filed 04/08/25     Page 3 of 16

provide self-care in an institutional setting; a defendant's age of at least 65 years old combined with a serious deterioration in his physical or mental health; and the incapacitation of a parent, spouse, or minor child of the defendant and the defendant is the only available caretaker.[11] Another extraordinary and compelling reason enumerated in the policy statement is when the defendant was the victim of physical or sexual abuse while in custody "that was committed by, or at the direction of, a correctional officer, [or] an employee or contractor of the Bureau of Prisons."[12]

The policy statement also includes a catchall provision for "other reasons" that might constitute an extraordinary or compelling reason warranting a sentence reduction, and a court may consider "any other circumstance or combination of circumstances that, when considered by themselves or together" "are similar in gravity" to the enumerated reasons.[13] "The plain meaning of 'extraordinary' suggests that a qualifying reason must be a reason that is beyond the mine-run either in fact or in degree. By the same token, the plain meaning of 'compelling' suggests that a qualifying reason must be a reason that is both powerful and convincing."[14]

---

[11] *Id.* § 1B1.13(b)(1)-(3).

[12] The assault must also be established by a criminal conviction or a finding of liability in a civil case or administrative proceeding. *Id.* § 1B1.13(b)(4).

[13] *Id.* § 1B1.13(b)(5).

[14] *United States v. Canales-Ramos*, 19 F.4th 561, 566-67 (1st Cir. 2021) (citations omitted).

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 4 of 16
Case 4:96-cr-00026-SLG   Document 121   Filed 04/08/25   Page 4 of 16

Further, pursuant to both 28 U.S.C. § 994(t) and § 1B1.13, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason . . . . However, rehabilitation of the defendant . . . may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."[15]

II. Discussion

As an initial matter, the Court finds that Mr. Walter has exhausted his administrative remedies. He submitted a request for compassionate release to the warden of his facility on April 1, 2024, which the warden denied on May 14, 2024.[16] Mr. Walter also submitted a supplemental request for compassionate release to the warden on June 21, 2024, which was more than 30 days before Mr. Walter filed his compassionate release motion in this Court.[17]

Moving to the merits, Mr. Walter contends that the following reasons, in combination, amount to an extraordinary and compelling reason warranting a sentence reduction: (1) "Need to Serve as Caregiver to Aged Parent"; (2) "Youth at the Time of the Offen[s]e"; and (3) "Extraordinary Rehabilitation."[18] The Court will address each in turn.

---

[15] U.S. Sent'g Guidelines Manual § 1B1.13(d).

[16] Docket 98-5 at 2.

[17] Docket 98-8. The Government agrees that Mr. Walter has exhausted his administrative remedies. Docket 120 at 8.

[18] Docket 98 at 1; Docket 109 at 5-12.

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 5 of 16
Case 4:96-cr-00026-SLG   Document 121   Filed 04/08/25   Page 5 of 16

### 1. Caregiver for Parent

Mr. Walter explains that his mother is 80 years old, a recent widow, and lives alone in a small cabin 50 miles from Fairbanks, Alaska. He indicates that his mother also suffers from chronic macular degeneration, which diminishes her ability to drive in the dark.[19] Mr. Walter maintains that he "would serve as the ideal choice to be her caregiver."[20] That is because, in Mr. Walter's view, none of his three siblings are "situated to serve in the capacity as caregiver."[21]

Sentencing Guideline § 1B1.13(b)(3)(C) provides that an extraordinary and compelling reason for a sentence reduction is the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." Mr. Walter has not shown either that his mother is incapacitated or that he would be the only available caregiver. According to Mr. Walter's motion, his mother still lives independently, although she suffers from a condition that prevents her from driving in the dark. Based on those facts, the Court finds that Mr. Walter's mother is not incapacitated. Mr. Walter also indicates that his older sister would be "willing" to care for their mother but suggests that she would be unavailable to do so because she lives in Michigan and cares "for her children and grandchildren."[22] As

---

[19] Docket 98 at 2; Docket 109 at 3.

[20] Docket 98 at 2.

[21] Docket 98 at 3.

[22] Docket 98 at 3.

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 6 of 16
Case 4:96-cr-00026-SLG    Document 121    Filed 04/08/25    Page 6 of 16

such, it appears Mr. Walter's older sister could be an available caregiver for their mother. Further, Probation and the Government both note that Mr. Walter seeks release to a residential reentry center "more than 300 miles from his mother," which would clearly inhibit his ability to serve as her caretaker, at least so long as he resided there. Therefore, the Court finds that the health of Mr. Walter's mother does not constitute an extraordinary and compelling reason.[23]

### 2. Youth

Mr. Walter next contends that at the time he committed these offenses, he was 23 years old and "suffered from severely arrested social, emotional, and psychological development due to a lifetime of abusive childhood and adolescent social and cultural deprivation by virtue of his radical upbringing in the Alaska wilderness."[24] Mr. Walter relies on *United States v. Cruz*.[25] In that case, a district court granted the defendant's motion for compassionate release, reducing his life sentence to a 31-year sentence.[26] The court found that Cruz presented circumstances that, in combination, amounted to an extraordinary and compelling reason warranting a sentence reduction. Those circumstances were Cruz's age

---

[23] *See United States v. Hendrickson*, Case No. CR 21-32-MDWM, 2024 WL 554328, at *2 (D. Mont. Feb. 12, 2024) ("Courts routinely deny motions for compassionate release when inmates cannot show that they would be the only available caretaker." (quoting *United States v. Suarez*, Case No. 20-cr-03570-BAS-1, 2023 WL 7713580, at *3 (S.D. Cal. Nov. 15, 2023))).

[24] Docket 98 at 3-4.

[25] Docket 98 at 4 (citing *United States v. Cruz*, Case No. 3:94-CR-112 (JCH), 2021 WL 1326851 (D. Conn. April 9, 2021)).

[26] *Cruz*, 2021 WL 1326851, at *15.

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 7 of 16
Case 4:96-cr-00026-SLG   Document 121   Filed 04/08/25   Page 7 of 16

at the time of the offense—he was 18 years old; extraordinary rehabilitation; underlying health conditions that increased his risk of severe illness were he to contract COVID-19; and his mother's deteriorating health, with Cruz able to "assist his mother in a way that no other person currently can."[27] In considering Cruz's age at the time of the offense, the court noted that when Cruz was originally sentenced, the Sentencing Guidelines were mandatory and required a life sentence.[28]

*Cruz* is distinguishable from Mr. Walter's case. First, unlike Cruz whose life sentence was a result of the then-mandatory Sentencing Guidelines, Mr. Walter's life sentence was required by statute. Next, *Cruz* was issued in 2021, before the policy statement at § 1B1.13 was binding on courts. The *Cruz* court was therefore able to consider circumstances outside the scope of § 1B1.13 when determining whether Cruz had shown an extraordinary and compelling reason for a sentence reduction. Here, the Court is bound by the policy statement and as explained above, Mr. Walter has not satisfied the requirements of § 1B1.13(b)(3)(C) based on his mother's health. And while the Court acknowledges Mr. Walter's characterization of his upbringing and developmental difficulties, there is no indication that the sentencing court did not consider Mr. Walter's age at the time of sentencing. Further, the sentencing court considered the psychological

---

[27] *Id.* at *5-10.

[28] *Id.* at *5.

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 8 of 16
Case 4:96-cr-00026-SLG   Document 121   Filed 04/08/25   Page 8 of 16

examinations performed by two doctors before sentencing Mr. Walter.[29] As such, the sentencing court considered Mr. Walter's age and psychological condition before sentencing Mr. Walter to life imprisonment.

Mr. Walter also suggests that the sentencing court was bound by the Sentencing Guidelines—which were mandatory at the time of Mr. Walter's sentencing—to impose a life sentence.[30] However, as the Government correctly notes, a life sentence was, and still remains, mandatory for first degree murder by statute under 18 U.S.C. § 1111, and not as a result of the Sentencing Guidelines.[31]

In sum, the Court finds that Mr. Walter's youth and developmental difficulties at the time of the offenses—which were considered by the sentencing court—do not constitute an extraordinary and compelling reason warranting a sentence reduction.

---

[29] Docket 98 at 5 (noting that two pretrial psychological evaluations were performed of Mr. Walter); Docket 98-4 (psychological evaluation summaries); Docket 88 at 2 (criminal judgment directing two psychological reports be submitted to the Bureau of Prisons).

[30] Docket 109 at 7 ("Post *Booker*, this court now has discretion to fashion an appropriate sentence, and releasing Walter after 360 months would reflect the seriousness of his crime and would not create disparities with other similarly serious crimes.").

[31] Docket 120 at 10. Because the statutory mandatory life term is unchanged, Mr. Walter cannot show an extraordinary and compelling reason for a sentence reduction pursuant to § 1B1.13(b)(6), which applies to unusually long sentences where a change in the law has occurred and there would be a gross disparity between the sentence likely to be imposed now and the initial sentence.

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 9 of 16
Case 4:96-cr-00026-SLG     Document 121     Filed 04/08/25     Page 9 of 16

### 3. Rehabilitation

Mr. Walter also contends that he "is no longer a threat to the public, is penitent and remorseful, and is prepared to function in a free society."[32] His motion expresses regret for his crimes.[33] He also states that he has completed approximately 30 programs while in Bureau of Prisons custody.[34] Mr. Walter presents evidence that the Bureau of Prisons has determined that he is a minimum risk inmate and has a low likelihood of recidivism.[35] His last disciplinary infraction—and his first one since 2006—was in 2018 for conducting a gambling pool.[36]

Mr. Walter's participation in BOP programming and his acceptance of responsibility for his criminal conduct and expression of regret demonstrates personal growth, which is certainly commendable. However, pursuant to § 1B1.13(d), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason warranting a sentence reduction. Rehabilitation may "only be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."[37]

---

[32] Docket 98 at 5.

[33] Docket 98 at 7.

[34] Docket 98 at 7.

[35] Docket 98-7 at 6-7.

[36] Docket 98-7 at 8.

[37] U.S. Sent'g Guidelines Manual § 1B1.13(d).

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 10 of 16
Case 4:96-cr-00026-SLG    Document 121    Filed 04/08/25    Page 10 of 16

The Court will therefore consider Mr. Walter's rehabilitation in determining whether he has presented an extraordinary and compelling reason for a sentence reduction.

### 4. Other Reasons

As a component of his rehabilitation argument, Mr. Walter also maintains that his assistance to the Bureau of Prisons and the resulting active "hit" against his life constitutes an extraordinary and compelling reason warranting a sentence reduction.[38] He explains that, in May 2008, after a race riot started by White supremacist gangs at USP Florence, he volunteered to serve as a liaison between the prison administration and the prison's Black population.[39] By volunteering, Mr. Walter explains that he lost his "neutral and independent status" as an inmate who was unaffiliated with any gang or group.[40] Mr. Walter states that he met with representatives from both the Black and White inmate populations and, ultimately, a "peace" was brokered and members of the White supremacist gangs at USP Florence were released from the special housing unit, where they had been housed since the riot.[41] However, Mr. Walter explains that in August 2008, the White supremacist gangs began "conspiring to take back the yard" and that

---

[38] Docket 98 at 9; *see also* Docket 109 at 10-12.

[39] Docket 98 at 9.

[40] Docket 98 at 9.

[41] Docket 98 at 10.

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 11 of 16
Case 4:96-cr-00026-SLG   Document 121   Filed 04/08/25   Page 11 of 16

inmates in the regular population grew concerned.[42] Mr. Walter states that the regular inmates then coordinated hits on all members of several gangs, and that, even though he was not involved, the gangs believed that Mr. Walter was responsible and put a "kill on sight" "green light" order on Mr. Walter, which he states can never be rescinded.[43]

Mr. Walter further explains that when he was moved to another facility in 2018, USP Victorville, he was assaulted by members of a White supremacist gang "as retribution for the murder" of a gang member "ten years prior" at USP Florence and because he had spent six years in the Work Cadre Program, which was viewed by gangs as assisting law enforcement.[44] With his motion, Mr. Walter submitted letters from three inmates who are former gang members supporting Mr. Walter's account.[45] Following that assault, Mr. Walter was in protective custody at USP Tucson for several years.[46] Mr. Walter does not identify any further assaults

---

[42] Docket 98 at 10.

[43] Docket 98 at 10.

[44] Docket 98 at 10-11. In his motion, Mr. Walter first states that the assault occurred in 2008, but he later explains that the assault was for the murder of a White supremacist gang member that occurred "ten years prior, at Florence, in 2008." Docket 98 at 10-11. Thus, the Court assumes the reference to 2008 for the assault was a typographical error.

[45] Docket 98-6. Mr. Walter's counsel requested records from the Bureau of Prisons regarding information relevant to Mr. Walter's account but has not yet received any records. Docket 109 at 11; Docket 109 at 15-16.

[46] Docket 98 at 11; the Bureau of Prisons website indicates that Mr. Walter has recently been moved to Fairton FCI, a medium-security facility. Fed. Bureau of Prisons, Inmate Locator (available at www.bop.gov/inmateloc/) (last accessed April 4, 2025).

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 12 of 16
Case 4:96-cr-00026-SLG    Document 121    Filed 04/08/25    Page 12 of 16

since 2018.[47] However, Mr. Walter states that protective custody can be revoked at any time.[48] He also states that the protection provided to him is not as extensive as that provided to former gang members who participate in the "drop out" program.[49]

Mr. Walter relies on *United States v. Beres*, in which the District of Montana reduced a defendant's sentence under § 3582(c)(1)(A) based on his participation in the "drop out" of a gang program and his participation in multiple education and rehabilitative programs, which earned him transfer to a minimum security facility.[50] The drop out program is "managed by the National Gang Unit of the Federal Bureau of Investigations and the Special Investigations Service of the Bureau of Prisons" and is "a lengthy process that requires the defendant to be fully vetted and debriefed by the relevant federal agencies" in order for the defendant to break away from gang affiliation.[51] "The 'drop out' program requires a defendant to provide valuable information to the relevant federal agencies to combat gang

---

[47] *See* Docket 98-7 at 7 (May 2024 Individualized Needs Plan – Program Review for Mr. Walter indicating that Mr. Walter "expressed no concerns over safety at this time").

[48] Docket 98 at 11; *see also* Docket 98-6 at 5 (letter from former prison gang member explaining that protective custody for inmates who have completed the drop out program, a program managed by the Federal Bureau of Investigations and BOP where gang members provide information to federal agencies and disaffiliate themselves from the gang, and other inmates in protective custody are not the same and that Mr. Walter could be "sent anywhere").

[49] Docket 98 at 11.

[50] *United States v. Beres*, Case No. CR 18-58-BLG-SPW-02, 2023 WL 8809320, at *1-2 (D. Mont. Dec. 20, 2023).

[51] *Id.* at *2

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 13 of 16
Case 4:96-cr-00026-SLG   Document 121   Filed 04/08/25   Page 13 of 16

activity and could, potentially, endanger the life of a defendant."[52] The district court found that the defendant's participation in the drop out program and his other rehabilitative efforts constituted an extraordinary and compelling reason warranting a sentence reduction.[53]

The Government responds that Mr. Walter's "fears of retaliation or future violence are too speculative to be an 'extraordinary and compelling reason' for his release," noting that the assault took place "over 15 years ago" and that Mr. Walter has since been in protective custody.[54]

The Court finds that, on the present record, Mr. Walter has not shown that any risk he faces because of the "kill on sight" gang directive constitutes an extraordinary and compelling reason warranting compassionate release. For a defendant's "other reason" to fall within that provision of the Guidelines, the reason must be "similar in gravity" to the extraordinary and compelling reasons enumerated in the Guidelines.[55] One such reason the Sentencing Commission identified is when a defendant was the victim of physical or sexual abuse while in custody "that was committed by, or at the direction of, a correctional officer, [or] an employee or contractor of the Bureau of Prisons."[56] The 2018 assault described

---

[52] *Id.*

[53] *Id.*

[54] Docket 120 at 12. *But see supra* n. 44 regarding the apparent typo in the date of the assault in Mr. Walter's motion.

[55] U.S. Sent'g Guidelines Manual § 1B1.13(b)(5).

[56] The assault must also be established by a criminal conviction or a finding of liability in a civil

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 14 of 16
Case 4:96-cr-00026-SLG    Document 121    Filed 04/08/25    Page 14 of 16

by Mr. Walter, allegedly due to his assistance at USP Florence in 2008 and his participation in the Work Cadre Program, is certainly serious. However, Mr. Walter does not allege that the assault was at the direction of any Bureau of Prisons employee. Nor does Mr. Walter allege that he has faced any further threats or assaults since 2018. The Sentencing Commission identified and expressly limited this extraordinary and compelling reason to inmates that were abused by prison staff. The Court finds that a defendant whose name is on a "kill on site" gang list and who is in protective BOP custody does not present a reason "similar in gravity" to an inmate who has been sexually or physically abused by prison staff and thus does not constitute an extraordinary and compelling reason for a sentence reduction pursuant to the "other reasons" provision in the Sentencing Guidelines.

In sum, Mr. Walter has not demonstrated that his circumstances, alone or in combination, constitute an extraordinary and compelling reason for a reduction of his life sentence.[57]

## CONCLUSION

Mr. Walter's Motions for Compassionate Release at Docket 98 and Docket 109 are **DENIED**. Further, Mr. Walter's Motion to Strike at Docket 115 is **DENIED**, as the United States Probation Report assists the Court, particularly in providing

---

case or administrative proceeding. *Id.* § 1B1.13(b)(4).

[57] Because Mr. Walter has not demonstrated an extraordinary and compelling reason for a sentence reduction, the Court does not consider the 18 U.S.C. § 3553(a) factors. *See Keller*, 2 F.4th at 1284.

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 15 of 16
Case 4:96-cr-00026-SLG   Document 121   Filed 04/08/25   Page 15 of 16

information about Defendant's conduct in Bureau of Prisons custody, and was prepared at the Court's request.[58]

DATED this 8th day of April 2025, at Anchorage, Alaska.

<i><u>/s/ Sharon L. Gleason</u></i><br>
UNITED STATES DISTRICT JUDGE

---

[58] Docket 114 at 2 (sealed).

Case No. 4:96-cr-00026-SLG, *United States v. Walter*
Order on All Pending Motions
Page 16 of 16
Case 4:96-cr-00026-SLG    Document 121    Filed 04/08/25    Page 16 of 16